[No. 16684.    Department One.    January 20, 1922.]

# M. C. CHASE et al., Appellants, v. W. T. SMITH, Respondent.[1]

PLEADING (53.)—GENERAL DENIAL—SCOPE. In an action by a landlord against a tenant for damages at the close of the term, based on the tenant's failure to leave the same quantity of land in summer fallow as existed at the time of entry, the complaint alleging ownership in plaintiffs of such summer fallow, is sufficiently traversed by a general denial as to permit the introduction of evidence showing that neither by the understanding of the parties nor by custom was it incumbent on defendant to leave the same amount of summer fallow on vacating the land.

SAME (196)—WAIVER OF DEMURRER—PLEADING OVER. Error in sustaining a demurrer to a complaint is waived where the plaintiff files an amended complaint.

Appeal from a judgment of the superior court for Whitman county, Mills, J., entered December 23, 1920, upon the verdict of a jury rendered in favor of the defendant, in an action on contract, after a trial on the merits. Affirmed.

*Chas. F. Voorhees* and *Clyde E. Lacey*, for appellants.

*Hanna, Miller & Hanna*, for respondent.

PARKER, C. J.—The plaintiffs, Chase and wife, seek recovery of damages alleged to have resulted to them from the violation of the terms of a lease contract by the defendant Smith, under which lease he became their tenant and renter of six hundred and forty acres of land owned by them and situated in Whitman county. A trial upon the merits before the superior court and a jury of that county resulted in verdict and judgment in favor of the defendant, from which the plaintiffs have appealed to this court.

[1]Reported in 203 Pac. 985.

The trial was had upon appellants' amended complaint and respondent's answer thereto. The amended complaint contains a copy of the lease which shows the agreed tenancy to be for the period of one year from October 1, 1916, with the privilege on the part of respondent, at his own election, to continue the term for one, two or three additional years. The only agreed rental is $3,000 per year, payable in advance on the first day of October of each year of the entire term the tenancy shall run. The lease is the simplest form of a lease of real property with nothing but cash rent reserved. There is nothing in the lease in terms restricting the use of the land by respondent to any particular use or purpose. Indeed, the lease does not even within itself in any manner mention or even suggest the nature or condition of the land; and the only language therein having any reference to the condition the land shall be in upon its surrender at the termination of the tenancy is the following:

"And the said party of the second part [defendant and respondent] further covenants and agrees with the said parties of the first part [plaintiffs and appellants] that at the expiration of the time mentioned in this lease, peaceable possession of the said premises shall be given to said parties of the first part, in as good condition as they now are, the usual wear, inevitable accidents and loss by fire excepted, . . ."

The amended complaint further alleges:

". . . that said defendant went into possession of said premises under said lease on or about the 1st day of October, 1916, and that the phrase 'in as good condition as they now are' contained in the fifth paragraph of said lease, was used, understood and intended by the parties to said lease, to protect the parties of the first part thereto, the plaintiffs herein, in relation to weeds, and the 240 acres of summer fallow on said premises at the time of the execution thereof.

. . . that at all times herein mentioned there was a general, well established and notorious custom and usage of many years continuance, generally known and acted upon, prevailing in Whitman county, Washington, that a tenant who takes possession of farm land under a farm lease without paying for the summer fallow thereon shall, upon vacating the premises held under such a lease, leave on such premises the same number of acres of summer fallow as were upon the premises at the time the tenant took possession thereof. . . .

"That at the time of the execution of said lease and at the time defendant went into possession of said premises under said lease as aforesaid, there were 240 acres of summer fallow thereon, the property of plaintiffs, and that defendant used and availed himself of said summer fallow without paying anything therefor, and that at the time defendant vacated said premises summer fallow in Whitman County, Washington, in the vicinity of said premises, was reasonably worth the sum of $15 per acre, and that defendant vacated said premises on or about, to-wit, the 1st day of October, 1919, without leaving any summer fallow whatsoever on said premises, to the damage of plaintiffs in the sum of $3,600.''

The only prayer of the amended complaint is for judgment against respondent in the sum of $3,600, interest from the date of the commencement of the action, and costs. Respondent by his answer denies that the words "in as good condition as they now are," contained in the lease and referring to the premises, were understood by the parties as alleged in the amended complaint; and denies the existence of the custom alleged in the amended complaint; but admits that there were two hundred and forty acres of summer fallow on the land when he went into possession of it under the lease on October 1, 1916. The answer does not in terms deny or admit that this summer fallow was "the prop-

erty of plaintiffs,'' as in terms alleged in the amended complaint. This, as we shall presently see, is claimed by counsel for appellants to be an admission of such alleged ownership of the summer fallow, whatever that means. Upon the issues so made the cause proceeded to trial. At the conclusion of the trial, the court submitted to the jury two special interrogatories to be answered and returned with its general verdict; which interrogatories and the jury's answers thereto, returned with its general verdict in favor of respondent, are as follows:

''Do you find that it was agreed between the parties to the lease in question that the phrase 'in as good condition as they now are,' was used and understood by them to mean that defendant should leave as much summer fallow as there was on the land when the lease was made?

''Answer: No.

''Do you find a custom or usage in Whitman county whereby the tenant under a lease with cash rental is required to leave as much summer fallow as was on the land when he leased it?

''Answer: No.''

There are a considerable number of assignments of error made by counsel for appellants, and their argument thereon takes a rather wide range. We regard, however, the controlling questions to be rather simple and narrow in scope, and they are as fully stated as the nature of the case requires, in the opening brief of counsel for appellants, as follows:

''There were two and only two issues in the case. First: As to whether or not the phrase 'in as good condition as they now are' contained in the fifth paragraph of said lease, was used, understood and intended by the parties to said lease to protect the appellants in relation to weeds, and the 240 acres of summer fallow in said farm land. Second: As to the existence or non-existence of the custom . . .''

The latter is evidently only incidental to the former.

It is contended in appellants' behalf that "the court erred in conducting the trial on the theory that the ownership of the summer fallow was in issue," and in admitting evidence touching such issue. The argument seems to be, in substance, that appellants' "ownership" of the two hundred and forty acres of summer fallow upon the land at the beginning of the tenancy is an admitted fact in the case because respondent did not in his answer to the amended complaint in terms deny the allegation therein that the summer fallow was "the property of plaintiffs."

We think, however, this allegation of so-called "ownership" of the summer fallow was of such general character that respondent's general denial contained in his answer was sufficient to traverse such general allegation of the amended complaint, if indeed it needed to be traversed as a fact, by the answer. It seems to us, however, that the amended complaint and answer constitute a tender by both appellants and respondent, as questions of fact, of the question of the meaning of the lease contract as understood by the parties at the time of its execution, and incidental thereto the question of the existence of the alleged custom. We think the trial court did not err, to the prejudice of appellants, in proceeding with the trial upon this theory and ultimately submitting to the jury the two special interrogatories above quoted. The words "ownership of the summer fallow," it seems to us, are not very appropriate to describe the claimed contractual obligation resting upon respondent with reference to the summer fallow; but that is evidently what is meant by such "ownership" mentioned in appellants' complaint and brief. Respondent's denials in his answer were, we think, sufficient to negative the claim that he was under any

obligation, by the express or implied terms of the lease, to leave any summer fallow upon the land at the conclusion of the tenancy. This was the real issue, tendered as an issue of fact.

All other contentions here made in behalf of the appellants, save as to the sufficiency of the original complaint, have to do, in their last analysis, with the claim that the trial court should have decided the whole case in appellants' favor as a matter of law. A review of the evidence convinces us that it was ample to support both the general and special findings of the jury. Looking to the whole record and the unconditional nature of this cash rental lease, we think there is much sounder ground for arguing that the trial judge could have more properly decided the cause as a matter of law in favor of respondent than that he could have decided the cause as a matter of law in favor of appellants.

Contention is made that the trial court erred, to the prejudice of appellants, in sustaining respondent's demurrer to their original complaint. We think, in the light of the whole record, this ruling was in any event without prejudice, and, if erroneous, such error was waived by appellants' filing their amended complaint. The original complaint set up another additional claim of damage to that of failure to return the land to appellants with as much summer fallow thereon as when taken from them by respondent. This other claim of damages made in the original complaint could have been plead as a separate cause of action. Appellants were not prevented from setting up in their amended complaint such claim of damage in addition to the one set up therein as above noticed. Had appellants done this in such manner that the trial court could have ruled upon such claim, apart from the claim which was set up in their amended complaint, they could have obtained

such ruling thereon that, had it been against them, their claim of error thereon could have been properly preserved for such review in this court as they might have deemed themselves entitled to.

The judgment is affirmed.

FULLERTON, MITCHELL, TOLMAN, and BRIDGES, JJ., concur.